Case number 1836-33, United States v. Cross. Good morning, Mr. Henderson. Good morning. May it please the Court. I'm Peter Henderson. I represent Al Cross. Mr. Cross did not enter a knowing and voluntary plea of guilty to bank fraud. He admitted to criminal conduct, but that criminal conduct was not bank fraud. Does Mr. Cross realize that if he's allowed to withdraw his guilty plea at best, he will face a trial on the same charges? The government appears to have some strong evidence regarding his manipulation of the bank employees, and of course he will lose the benefit of having reached a plea. Is he aware that the outcome could be worse if he receives the relief he's requesting? He certainly understands that. He did not receive an adjustment for acceptance of responsibility, and he got the top end of the guidelines range. So the risk is less than it might be in other cases. But he very much disputes the critical element that was missing, which was whether he did in fact manipulate these employees, whether he did in fact make material misrepresentations, or in other words, that his offense involved a materiality of falsehood. According to him, and I think this is evident in his pleadings, he went in with his name, his bank accounts, his numbers. He presented them a check, and they gave him money. So in his view, the government can't prove that. Now, we're assuming on this appeal they can. The question is whether he knowingly and voluntarily pled guilty. And so the law on this area is sort of interesting because most of these cases are from the 1980s and 1990s, and this court had come to the conclusion that schemes like this that involved presentation of bad checks could violate the bank fraud statute. The Supreme Court then said no, we hold that materiality of falsehood is an element of the federal bank fraud statute. And that was precisely the opposite answer that this court gave in cases like LaDun and Doherty, where the defendant said there was no misrepresentation here, you can't convict me of bank fraud. And the court said no, you don't always need a misrepresentation for bank fraud. Mr. Anderson, if the jury instruction that had been read by the assistant judge's attorney at the time of the plea had included this fifth element, would that do away with your client's argument? Would your client still have an argument? I think that he would have a much weaker argument. So one of the—because he didn't really admit it. He admitted, yes, I cashed bad checks, and the district court thought that was sufficient, the government thought that was sufficient, and that's the reason the district court gave for denying his motion to withdraw his pleas. He said no, you came in here, you said you cashed bad checks, and you knew that they were bad. So there still would be an argument that he didn't really understand the elements, but that's, of course, a weak argument because the prosecutor would have explained those elements even if his admission had not been specifically tied to those elements. You know, the PSR tells us that he's taking Paracet for early stages of dementia. That he has early stages of dementia? Yes. Yes, I think that he has a variety of health problems. He's perfectly lucid when he speaks with me, but I think that that's right. He's aging. He's in his upper 70s at this point. Not that that's old, just aging. You're in big trouble. Yeah, I have to be very careful. But, you know, that's one of our concerns. This isn't a legal argument, but we wanted to make sure the court knows he's in his mid-70s and he's being brought into court in shackles. I mean, you know, again, it's not a legal argument, but it's something that we think this court ought to be aware of, that this is what's happening in district courts. Anderson, if we were to reverse the district court's decision here, would we also be overruling the Doherty line of cases, including the Higgins case? I think you would be recognizing that the Supreme Court overruled those cases, or at least abrogated those cases in Nader, yes, because the reasoning is precisely the opposite. In Doherty, again, the defendant made the argument, you need a false statement or a misrepresentation to convict me of a scheme to defraud. And in the Supreme Court, the government said, yeah, you don't need to prove that, and the Supreme Court said, no, we hold this is an element of bank fraud. You know, he argues that the unadorned writing of rubber checks is not enough to show the violation of 1344-1. But was that really the extent of his conduct? I mean, it appears that he wrote rubber checks to create a false balance, and he quickly wrote a second rubber check, drawing on that fake deposit. It certainly looks like the first steps of check-kiting. There may be evidence that would be presented at a trial or admitted to under oath that would satisfy those elements. The only thing we see in the record comes from the pre-sentence report and from the sentencing transcript about that, though. And that's why focusing on the claim that Mr. Cross is making on appeal is important. He's not claiming that he's actually innocent or that he could not be convicted if he were properly informed of the elements or if a jury were properly informed. But his admissions under oath at the change of plea hearing were just, yeah, I knew that these checks were bad and I cashed them, and so the prosecutor's right about that. So now there are multiple checks involved here, and so you start to get into scheme. But it has to be a scheme to defraud, and that's where the missing element is so important. Because in Mr. Cross's view, as he expressed it to the district court, he didn't misrepresent who he was or what he was doing to these bank employees. Well, but he was taking, let us call them loans, without the consent of the banks, right? Right, and he was convicted three times in state court for that action. That's part of this, is not everything has to be bank fraud. This might be theft, this might be some other offense. One of the rationales in the 1982 Williams case from the Supreme Court was that the Supreme Court wasn't going to read these statutes so broadly because it was convinced that the states already were regulating check-kiting and bad checks. So this is criminal activity. We're not disputing that. It's just whether this is actually federal bank fraud. That's the question. And without being informed or understanding the elements of bank fraud, this plea was not constitutionally knowing and voluntary. Okay. Do you want to say something? I would. Thank you, Your Honor. Thank you. Your Honor, may I adjust the microphone? You may adjust the entire courtroom. Your Honor, the issue that's before this Court is whether Judge Rosenstengel committed error by denying Mr. Cross's pro se motion to withdraw his guilty plea. The standard that Judge Rosenstengel had to apply was whether there was a fair and just reason to allow him to withdraw that plea. And on appeal, the standard is whether or not she abused her discretion. And, Your Honor, when you look at this record, it simply does not support a conclusion that Judge Rosenstengel abused her discretion. The appellant is making two principal arguments on appeal, and he's repeated that during his oral argument here today. First, that his conduct did not constitute federal bank fraud. He's acknowledging it was illegal conduct, but he's saying it didn't constitute federal bank fraud. But, again, what this guy did was he opened bank accounts at the victim banks in southern Illinois. Then he wrote checks on either closed or inactive accounts that he controlled at out-of-state banks, took those checks into the victim banks in southern Illinois, deposited them, thereby tricking these banks into thinking that the funds were there. The banks inflated his bank balance based on funds that weren't there. Then, before the banks could discover that they had been tricked and he had concealed the fact that these were NSF checks, then he withdrew all the funds. So, basically, and I think, Judge Rovner, I think you hit on it, the essence of this conduct is check-kiting. It didn't go so far as, you know, the checks going back and forth between the banks, but in dotery, this court said, check-kiting is at root a plan that's designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds. And that's exactly what Mr. Cross did here. He deposited these NSF checks to trick the bank into inflating his account balance so he could take those funds out. You know, in the PSR, there's evidence of material falsehoods for one or two of the accounts. I saw that he schmoozed bank employees to convince them not to put a hold on his deposit, for example. Yes, Your Honor. But would the government agree that for several of the accounts, there's no evidence in the record of material falsehood? I don't think—I think Your Honor is correct that for some of the accounts, there's not that same evidence in terms of what he told the banks, for some of them. For some, there are. There were material falsehoods constituting, I'm a big-time businessman. I'm going to invest money in your community. And that he also made, on several occasions, material falsehoods to conceal what he was doing, telling them, oh, I'll go out to California and find out what happened with my backers. There were no backers. Or I'll go down to Tennessee and find out why my partner didn't put the money in. There was no partner in Tennessee. So there are material falsehoods as to some accounts. But what I would point out, Your Honor, is that it's our position that the appellant is misreading the Nieder decision. He's misreading this particular line, which says that the court stated, we hold that materiality of falsehood is an element of federal mail fraud, wire fraud, and bank fraud statutes. Clearly, the Nieder court held that materiality is an element. But the court didn't say it has to be some sort of material misrepresentation. See, in the usual course, material is an adjective that modifies misstatement or misrepresentation. How was materiality manifested here? What conduct or statement was shown to be material to the scheme here? Yes, Your Honor, the materiality was in the false pretense and the concealment that was going on here. He was depositing these checks and causing the banks to think that there were funds there to back those checks when, in fact, there were not. And as we alleged in the indictment, he withdrew those funds before the banks could realize that the funds weren't actually there. So even though I didn't specifically use the word material, either in the indictment or in my recitation of the elements or recitation of the facts of the case, certainly the concept of materiality was there. The concept is that the banks would not have allowed him to withdraw these funds had they known that these were NSF checks. And I don't think that the defense is arguing, as a factual matter, that what he did wasn't material. I mean, I don't think any reasonable person can argue that if these banks had known that these NSF checks were NSF, it would have still paid out to Mr. Cross and let him take all of these funds out there. So is it enough that the scheme or artifice be material to the bank's action? Could you repeat that, Your Honor? Yeah, I think. It's enough, you're saying, I think, that the scheme or artifice is material to the bank's actions. That is correct, Your Honor. Okay. I think when the Supreme Court ammeter is saying materiality of falsehood is required, when they're using falsehood, they're talking about the various different types of means that you can commit bank fraud. And 1344-2 itself contains other means of committing bank fraud other than misrepresentations. Under 1344-2, if you obtain property from a bank by means of false pretenses or misrepresentations or false promises, that constitutes bank fraud. So to accept the appellant's position that Nieder requires a material false statement would require this Court to read out portions of the different means that are in 1344-2. And I believe in Nieder the Court also stated that fraud can be committed by means of material concealment. Well, none of the statutes talk about concealment, but I would submit that when there's a material concealment such as there is here, that's a part of a scheme to defraud a bank. The defense has argued on several occasions that this is a bad check case. And I agree with the point that I believe Judge Rovner was making, that this goes well beyond a bad check case. This wasn't Mr. Cross simply writing a bad check to pay a utility bill. He was purposefully using these NSF checks to inflate his account balances so he could drain the funds out of the bank and use those for his own purposes, thereby placing the banks at risk of loss. And there were substantial losses that were sustained by these banks, and that is the federal interest that Congress specifically wanted to address in enacting the bank fraud statute. The appellant is arguing that Nieder overruled this Court's prior cases, stating that check hiding is a crime under 1344.1. I submit that that's completely incorrect for a number of reasons. First of all, as I pointed out in my brief, Nieder was not a check hiding case. Nieder was a false statements case. The Court did not talk about check hiding. It did not state that its ruling applied to check hiding. And also I'd ask the Court to take into account the fact that the Senate report that was published in support of the bank fraud statute indicates that Congress specifically wanted to address check hiding and specifically wanted to respond to the Williams case saying that check hiding couldn't be prosecuted under 1014, which is the false statements to a bank statute. So I don't think you can interpret Nieder as overruling this Court's precedence on check hiding when the case doesn't address check hiding and it's a false statements case, and the Court didn't even consider the congressional intent in enacting the bank fraud statute. So for all these reasons, Your Honor, we respectfully ask that the Court affirm Judge Rosenstengel's decision to deny Cross's pro se motion to withdraw his plea. Thank you so much. Mr. Henderson. This Court already held, even in the 1990s, that this type of activity does not involve a false or fraudulent pretense under Section 1344.2. And so it does not follow that it could involve a material misrepresentation or false or fraudulent pretense under 1344.1. Even if the actions are material, material has to modify, as the Supreme Court put it, the falsehood. That was not explained to Mr. Cross. Mr. Cross did not understand that his offense had to involve, as an element, a materiality of falsehood. And the only way I understand the government's argument is to say that there are different elements for this statute depending on how you commit it. And that's just not how criminal law works. The statute sets forth elements, and if you satisfy those elements, you've committed the crime. We don't think that the Court should embrace a legal theory of liability that would conflict with an express holding of the Supreme Court, where they say we hold the statute has as an element a materiality of falsehood. So material has to modify falsehood. There has to be a misrepresentation. And this type of activity, the government brings up congressional intent, that's more important to some justices of the Supreme Court than others. And the Rehnquist Court in 1999 did not think that was as important as saying, look, we've got three statutes, mail, wire, and bank fraud. They should all mean the same thing, regardless of this particular congressional intent argument. So we think this Court is bound by neither. We think that the Court should adhere to the Supreme Court's holding the materiality of falsehood is an element. And because Mr. Cross did not understand that, his plea was not knowing and voluntary. Thank you. Thank you both so much, and have a great trip back.